1   **GLANCY PRONGAY & MURRAY LLP**
    LIONEL Z. GLANCY (#134180)
2   ROBERT V. PRONGAY (#270796)
    LESLEY F. PORTNOY (#304851)
3   CHARLES H. LINEHAN (#307439)
4   1925 Century Park East, Suite 2100
    Los Angeles, CA 90067
5   Telephone:  (310) 201-9150
    Facsimile:   (310) 201-9160
6   Email:  rprongay@glancylaw.com

7   *Attorneys for Plaintiff*

8                **UNITED STATES DISTRICT COURT**
9               **NORTHERN DISTRICT OF CALIFORNIA**

10  
    JOSEPH   RODRIGUEZ,   Individually   and       Case No.:
11  On Behalf of All Others Similarly Situated,

12                                    Plaintiff,       **CLASS ACTION COMPLAINT FOR**
                                                       **VIOLATIONS OF THE FEDERAL**
13              v.                                     **SECURITIES LAWS**

14  GIGAMON   INC.,   PAUL   A.   HOOPER,
    MICHAEL   J.   BURNS,   and   REX   S.            **JURY TRIAL DEMANDED**
15  JACKSON,

16                                    Defendants.

17
18
19
20
21
22
23
24
25
26
27
28

1   Plaintiff Joseph Rodriguez ("Plaintiff"), by and through his attorneys, alleges the following

2   upon information and belief, except as to those allegations concerning Plaintiff, which are alleged

3   upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his

4   counsel's investigation, which includes without limitation: (a) review and analysis of regulatory

5   filings made by Gigamon Inc., ("Gigamon" or the "Company"), with the United States ("U.S.")

6   Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and

7   media reports issued by and disseminated by Gigamon; and (c) review of other publicly available

8   information concerning Gigamon.

9   **NATURE OF THE ACTION AND OVERVIEW**

10   1.   This is a class action on behalf of persons and entities that acquired Gigamon's

11   securities between October 27, 2016, and January 17, 2017, inclusive (the "Class Period"), against

12   the Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the

13   "Exchange Act").

14   2.   Gigamon purportedly develops solutions that deliver "pervasive and dynamic

15   intelligent visibility and control of traffic across networks." The Company claims its "Visibility

16   Fabric" enables visibility, modification, enhancement, and control of network traffic. The

17   Company's "GigaSECURE Security Delivery Platform" purportedly leverages its Visibility Fabric

18   to streamline security operations by providing comprehensive visibility across the network to a

19   variety of security tools including those typically used by enterprises. The Company claims its

20   solutions enables security teams and IT personnel to gain advanced visibility into their IT

21   infrastructure.

22   3.   On October 27, 2016, the Company held a conference call with investors and

23   analysts to discuss the Company's third quarter 2016 financial results. On the call, Defendant

24   Michael J. Burns ("Burns") also announced the Company's fourth quarter 2016 financial

25   guidance, including "revenue in the range of $91 million to $93 million."

26   4.   Throughout the Class Period, Defendants made materially false and/or misleading

27   ─────────────────────

28   [1] "Defendants" refers to Gigamon, Paul A. Hooper, Michael J. Burns, and Rex S. Jackson, collectively.

1  statements, as well as failed to disclose material adverse facts about the Company's business,

2  operations, and prospects. Specifically, Defendants failed to disclose: (1) that Gigamon was

3  experiencing reduced product bookings in its North America West region; (2) that several of the

4  Company's significant customers were deferring purchasing decisions into 2017; (3) that the

5  Company failed to properly include these trends in its financial guidance; and (4) that, as a result

6  of the foregoing, Defendants' statements about Gigamon's business, operations, and prospects,

7  including statements about its revenue guidance, were false and misleading and/or lacked a

8  reasonable basis.

9       5.      On January 17, 2017, the Company issued a press release entitled "Gigamon

10  Announces Preliminary Fourth Quarter and Fiscal Year 2016 Results."  Therein, the Company

11  disclosed preliminary fourth quarter 2016 revenue of "$84.5 million to $85.0 million, compared to

12  the company's prior guidance of $91 million to $93 million."  The press release also quoted

13  Defendant Paul Hooper ("Hooper") as stating "fourth quarter revenue was below our prior

14  guidance" and that "[f]ourth quarter revenue fell short primarily due to lower than expected

15  product bookings in our North America West region, as several significant existing customer

16  accounts deferred purchasing decisions into 2017."

17      6.      On this news, the price of Gigamon common stock fell $12.65 per share, or 28.7%,

18  to close at $31.40 per share on January 18, 2017, on unusually heavy trading volume.

19      7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline

20  in the market value of the Company's securities, Plaintiff and other Class members have suffered

21  significant losses and damages.

22                          **JURISDICTION AND VENUE**

23      8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange

24  Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17

25  C.F.R. § 240.10b-5).

26      9.      This Court has jurisdiction over the subject matter of this action pursuant to 28

27  U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

28      10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and

Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.   In addition, the Company's principal executive offices are located in this Judicial District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

12.     Plaintiff Joseph Rodriguez, as set forth in the accompanying certification, incorporated by reference herein, purchased Gigamon common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant Gigamon Inc. is a Delaware corporation headquartered in Santa Clara, California.  Gigamon's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "GIMO."

14.     Defendant Paul A. Hooper was, at all relevant times, the Chief Executive Officer ("CEO") of Gigamon.

15.     Defendant Michael J. Burns was the Chief Financial Officer ("CFO") of Gigamon at all relevant times until October 27, 2016.  On November 9, 2016 Burns entered into a mutual separation and release agreement with the Company pursuant to which Burns will remain employed with the Company and provide "reasonable transition services" from October 27, 2016, until February 28, 2017.

16.     Defendant Rex S. Jackson ("Jackson") was the CFO of Gigamon from October 27, 2016, through the end of the Class Period.

17.     Defendants Hooper, Burns, Jackson (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the

contents of Gigamon's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.    Gigamon purportedly develops solutions that deliver "pervasive and dynamic intelligent visibility and control of traffic across networks."  The Company claims its "Visibility Fabric" enables visibility, modification, enhancement, and control of network traffic.  The Company's "GigaSECURE Security Delivery Platform" purportedly leverages its Visibility Fabric to streamline security operations by providing comprehensive visibility across the network to a variety of security tools including those typically used by enterprises.  The Company claims its solutions enables security teams and IT personnel to gain advanced visibility into their IT infrastructure.

### Materially False and Misleading
### Statements Issued During the Class Period

19.    The Class Period begins on October 27, 2016, on that day, the Company issued a press release entitled "Gigamon Reports Third Quarter 2016 Financial Results."  Therein, the Company, in relevant part, stated:

> Santa Clara, Calif., October 27, 2016 - Gigamon Inc. (NYSE:GIMO), the leader in traffic visibility solutions, today released financial results for the third quarter ended October 1, 2016.

> Third Quarter 2016 Financial Highlights:

> • Revenue of $83.5 million, up 47% year-over-year.

- GAAP gross margin was 83%, compared to 80% in the third quarter of fiscal 2015.

- Non-GAAP gross margin was 83%, compared to 81% in the third quarter of fiscal 2015.

- GAAP net income was $6.1 million, or $0.16 per diluted share, compared to GAAP net income of $4.3 million, or $0.12 per diluted share, in the third quarter of fiscal 2015.

- Non-GAAP net income was $14.0 million, or $0.36 per diluted share, compared to non-GAAP net income of $8.0 million, or $0.22 per diluted share, in the third quarter of fiscal 2015.

- Cash and investments were $245 million, up $17 million from the second quarter of 2016, and up $58 million from the third quarter of fiscal 2015.

"Gigamon posted another strong set of results for our third quarter, delivering record revenue with a growth rate of 47 percent year-over-year," said Paul Hooper, Chief Executive Officer of Gigamon. "Our business continues to accelerate with Q3 representing our third consecutive quarter of an increasing year-over-year revenue growth rate. We continue to invest in our platform and solutions resulting in our new GigaVUE-HC1 product, which extends our GigaSECURE Security Delivery Platform to mid-sized enterprises and out to the edge of large enterprises. With our increasingly strong leadership and momentum in the industry, our security-enabling, network visibility platform has become an essential component of modern IT infrastructure."

20.    On the same day, October 27, 2016, the Company held a conference call with investors and analysts to discuss the Company's third quarter 2016 financial results.  On the call, Defendant Burns also announced the Company's fourth quarter 2016 financial guidance.  Therein, Burns stated:

Now, for our Q4 outlook. We're excited to provide the following guidance using our same disciplined guidance methodology for our fiscal fourth quarter ending December 31, 2016. It's based on non-GAAP results and excludes any stock-based compensation and related expenses.

Our large deferred service, healthy product backlog and consistent quarterly linearity continue to provide good visibility on growth, profits and execution. We expect fourth quarter revenue in the range of $91 million to $93 million, 37% year-over-year growth at the midpoint. As we continue to execute on the profit drivers in all aspects of our business, we are confident that we will sustain gross margin at approximately the range of 82% to 83%.

We continue to believe that now is a great time for us to invest in our business. We're investing with conviction to expand our security portfolio, deliver next-generation technology and increase sales capacity to ensure continued strong growth next year.

In the fourth quarter of 2016, we also expect to accrue accelerated year-end commissions due to our strong performance throughout the year. As a result, we are

forecasting fourth quarter operating expenses in the range of $54.5 million to $55.5 million.

We expect to book a 32% non-GAAP tax provision and with the diluted share count of approximately $39 million, we expect to deliver non-GAAP earnings per share in the range of $0.36 to $0.38.

Achieving the midpoint of our fourth guidance will bring our 2016 annual revenue growth to 43%, our second consecutive year of accelerating revenue growth. We will deliver annual EPS growth of 56% and would result in annual gross margin above 82% and annual operating margin of 22%.

21.     The above statements identified in ¶¶19-20 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose: (1) that Gigamon was experiencing reduced product bookings in its North America West region; (2) that several of the Company's significant customers were deferring purchasing decisions into 2017; (3) that the Company failed to properly include these trends in its financial guidance; and (4) that, as a result of the foregoing, Defendants' statements about Gigamon's business, operations, and prospects, including statements about its revenue guidance, were false and misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

22.     On January 17, 2017, the Company issued a press release entitled "Gigamon Announces Preliminary Fourth Quarter and Fiscal Year 2016 Results."  Therein, the Company disclosed:

Santa Clara, CA - January 17, 2017 - Gigamon (NYSE: GIMO), the industry leader in traffic visibility solutions, today announced preliminary results for the fourth quarter and fiscal year ended December 31, 2016.

Gigamon currently expects:

Fiscal Fourth Quarter 2016 Preliminary Results

- Revenue of $84.5 million to $85.0 million, compared to the company's prior guidance of $91 million to $93 million.

- GAAP gross margin between 83 percent and 84 percent.

- Non-GAAP gross margin between 83 percent and 84 percent, compared to the company's prior guidance of 82 percent to 83 percent.

- GAAP earnings per share of $0.18 to $0.20.

- Non-GAAP earnings per share of $0.35 to $0.37 compared to the company's

prior guidance of $0.36 to $0.38.

Fiscal Year 2016 Preliminary Results

- Revenue of $310.3 million to $310.8 million, an increase of approximately 40 percent year-over-year.

- GAAP gross margin between 81 percent and 82 percent, at the fourth quarter midpoint an approximate 280 basis point improvement year-over-year.

- Non-GAAP gross margin between 82 percent and 83 percent, at the fourth quarter midpoint an approximate 250 basis point improvement year-over-year.

- GAAP operating margin between 9 percent and 10 percent, at the fourth quarter midpoint an approximate 440 basis point expansion year-over-year.

- Non-GAAP operating margin between 22 percent and 23 percent, at the fourth quarter midpoint an approximate 340 basis point expansion year-over-year.

- GAAP earnings per share of $1.32 to $1.34, at the fourth quarter midpoint an approximate 680 percent year-over-year increase.

- Non-GAAP earnings per share of $1.22 to $1.25, at the fourth quarter midpoint an approximate 50 percent year-over-year increase.

"We are disappointed our fourth quarter revenue was below our prior guidance, but we are pleased with our overall financial performance in 2016, our second consecutive year of 40 percent year-over-year revenue growth," said Paul Hooper, CEO of Gigamon. "Fourth quarter revenue fell short primarily due to lower than expected product bookings in our North America West region, as several significant existing customer accounts deferred purchasing decisions into 2017.

23.     On this news, the price of Gigamon common stock fell $12.65 per share, or 28.7%, to close at $31.40 per share on January 18, 2017, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Gigamon's securities between October 27, 2016, and January 17, 2017, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

25.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Gigamon's common stock actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Gigamon shares were traded publicly during the Class Period on the NYSE.  As of October 31, 2016, Gigamon had 36,127,054 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Gigamon or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

28.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Gigamon; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## **UNDISCLOSED ADVERSE FACTS**

30.     The market for Gigamon's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Gigamon's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Gigamon's securities relying upon the integrity of the market price of the Company's securities and market information relating to Gigamon, and have been damaged thereby.

31.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Gigamon's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Gigamon's business, operations, and prospects as alleged herein.

32.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Gigamon's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

**LOSS CAUSATION**

33.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

34.     During the Class Period, Plaintiff and the Class purchased Gigamon's securities at artificially inflated prices and were damaged thereby.   The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**SCIENTER ALLEGATIONS**

35.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.   As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Gigamon, their control over, and/or receipt and/or modification of Gigamon's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Gigamon, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE
(FRAUD-ON-THE-MARKET DOCTRINE)**

36.     The market for Gigamon's securities was open, well-developed and efficient at all relevant times.   As a result of the materially false and/or misleading statements and/or failures to disclose, Gigamon's securities traded at artificially inflated prices during the Class Period.   On November 25, 2016, the Company's stock price closed at a Class Period high of $60.35 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Gigamon's securities and market information relating to Gigamon, and have been damaged thereby.

37.     During the Class Period, the artificial inflation of Gigamon's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Gigamon's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Gigamon and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

38.     At all relevant times, the market for Gigamon's securities was an efficient market for the following reasons, among others:

(a)     Gigamon stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Gigamon filed periodic public reports with the SEC and/or the NYSE;

(c)     Gigamon regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Gigamon was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

39.     As a result of the foregoing, the market for Gigamon's securities promptly digested current information regarding Gigamon from all publicly available sources and reflected such information in Gigamon's stock price. Under these circumstances, all purchasers of Gigamon's

1    securities during the Class Period suffered similar injury through their purchase of Gigamon's

2    securities at artificially inflated prices and a presumption of reliance applies.

3        40.    A Class-wide presumption of reliance is also appropriate in this action under the

4    Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972),

5    because the Class's claims are, in large part, grounded on Defendants' material misstatements

6    and/or omissions.  Because this action involves Defendants' failure to disclose material adverse

7    information regarding the Company's business operations and financial prospects—information

8    that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to

9    recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable

10   investor might have considered them important in making investment decisions.  Given the

11   importance of the Class Period material misstatements and omissions set forth above, that

12   requirement is satisfied here.

13                              **NO SAFE HARBOR**

14       41.    The statutory safe harbor provided for forward-looking statements under certain

15   circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

16   The statements alleged to be false and misleading herein all relate to then-existing facts and

17   conditions. In addition, to the extent certain of the statements alleged to be false may be

18   characterized as forward looking, they were not identified as "forward-looking statements" when

19   made and there were no meaningful cautionary statements identifying important factors that could

20   cause actual results to differ materially from those in the purportedly forward-looking statements.

21   In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-

22   looking statements pleaded herein, Defendants are liable for those false forward-looking

23   statements because at the time each of those forward-looking statements was made, the speaker

24   had actual knowledge that the forward-looking statement was materially false or misleading,

25   and/or the forward-looking statement was authorized or approved by an executive officer of

26   Gigamon who knew that the statement was false when made.

27

28

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

42.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Gigamon's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

44.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Gigamon's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Gigamon's financial well-being and prospects, as specified herein.

46.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Gigamon's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Gigamon and its business operations and future prospects in light

1  of the circumstances under which they were made, not misleading, as set forth more particularly

2  herein, and engaged in transactions, practices and a course of business which operated as a fraud

3  and deceit upon the purchasers of the Company's securities during the Class Period.

4      47.    Each of the Individual Defendants' primary liability and controlling person liability

5  arises from the following facts: (i) the Individual Defendants were high-level executives and/or

6  directors at the Company during the Class Period and members of the Company's management

7  team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and

8  activities as a senior officer and/or director of the Company, was privy to and participated in the

9  creation, development and reporting of the Company's internal budgets, plans, projections and/or

10  reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the

11  other defendants and was advised of, and had access to, other members of the Company's

12  management team, internal reports and other data and information about the Company's finances,

13  operations, and sales at all relevant times; and (iv) each of these defendants was aware of the

14  Company's dissemination of information to the investing public which they knew and/or

15  recklessly disregarded was materially false and misleading.

16      48.    Defendants had actual knowledge of the misrepresentations and/or omissions of

17  material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

18  ascertain and to disclose such facts, even though such facts were available to them.  Such

19  defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

20  for the purpose and effect of concealing Gigamon's financial well-being and prospects from the

21  investing public and supporting the artificially inflated price of its securities.  As demonstrated by

22  Defendants' overstatements and/or misstatements of the Company's business, operations, financial

23  well-being, and prospects throughout the Class Period, Defendants, if they did not have actual

24  knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain

25  such knowledge by deliberately refraining from taking those steps necessary to discover whether

26  those statements were false or misleading.

27      49.    As a result of the dissemination of the materially false and/or misleading

28  information and/or failure to disclose material facts, as set forth above, the market price of

1   Gigamon's securities was artificially inflated during the Class Period.  In ignorance of the fact that

2   market prices of the Company's securities were artificially inflated, and relying directly or

3   indirectly on the false and misleading statements made by Defendants, or upon the integrity of the

4   market in which the securities trades, and/or in the absence of material adverse information that

5   was known to or recklessly disregarded by Defendants, but not disclosed in public statements by

6   Defendants during the Class Period, Plaintiff and the other members of the Class acquired

7   Gigamon's securities during the Class Period at artificially high prices and were damaged thereby.

8          50.     At the time of said misrepresentations and/or omissions, Plaintiff and other

9   members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff

10  and the other members of the Class and the marketplace known the truth regarding the problems

11  that Gigamon was experiencing, which were not disclosed by Defendants, Plaintiff and other

12  members of the Class would not have purchased or otherwise acquired their Gigamon securities,

13  or, if they had acquired such securities during the Class Period, they would not have done so at the

14  artificially inflated prices which they paid.

15         51.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act

16  and Rule 10b-5 promulgated thereunder.

17         52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the

18  other members of the Class suffered damages in connection with their respective purchases and

19  sales of the Company's securities during the Class Period.

20                              **SECOND CLAIM**
                  **Violation of Section 20(a) of The Exchange Act**
21                      **Against the Individual Defendants**

22         53.     Plaintiff repeats and realleges each and every allegation contained above as if fully

23  set forth herein.

24         54.     Individual Defendants acted as controlling persons of Gigamon within the meaning

25  of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and

26  their ownership and contractual rights, participation in, and/or awareness of the Company's

27  operations and intimate knowledge of the false financial statements filed by the Company with the

28  SEC and disseminated to the investing public, Individual Defendants had the power to influence

1   and control and did influence and control, directly or indirectly, the decision-making of the

2   Company, including the content and dissemination of the various statements which Plaintiff

3   contends are false and misleading. Individual Defendants were provided with or had unlimited

4   access to copies of the Company's reports, press releases, public filings, and other statements

5   alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and

6   had the ability to prevent the issuance of the statements or cause the statements to be corrected.

7          55.     In particular, Individual Defendants had direct and supervisory involvement in the

8   day-to-day operations of the Company and, therefore, had the power to control or influence the

9   particular transactions giving rise to the securities violations as alleged herein, and exercised the

10  same.

11         56.     As set forth above, Gigamon and Individual Defendants each violated Section

12  10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their

13  position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the

14  Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and

15  other members of the Class suffered damages in connection with their purchases of the

16  Company's securities during the Class Period.

17                              **PRAYER FOR RELIEF**

18         WHEREFORE, Plaintiff prays for relief and judgment, as follows:

19         (a)     Determining that this action is a proper class action under Rule 23 of the Federal

20  Rules of Civil Procedure;

21         (b)     Awarding compensatory damages in favor of Plaintiff and the other Class members

22  against all defendants, jointly and severally, for all damages sustained as a result of Defendants'

23  wrongdoing, in an amount to be proven at trial, including interest thereon;

24         (c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

25  this action, including counsel fees and expert fees; and

26         (d)     Such other and further relief as the Court may deem just and proper.

27                              **JURY TRIAL DEMANDED**

28         Plaintiff hereby demands a trial by jury.

1    Dated:  January 27, 2017                    **GLANCY PRONGAY & MURRAY LLP**

2

3                                                By: *s/ Robert V. Prongay*
                                                 Lionel Z. Glancy
4                                                Robert V. Prongay
                                                 Lesley F. Portnoy
5                                                Charles H. Linehan
                                                 1925 Century Park East, Suite 2100
6                                                Los Angeles, CA 90067
                                                 Telephone:  (310) 201-9150
7                                                Facsimile:   (310) 201-9160
                                                 Email: rprongay@glancylaw.com
8

9                                                *Attorneys for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SWORN CERTIFICATION OF PLAINTIFF

## GIGAMON INC. SECURITIES LITIGATION

I, Joseph Rodriguez, individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.   I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.   I did not purchase **GIGAMON INC.**, the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.   I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.   My transactions in **GIGAMON INC.** during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5.   I have not served as a representative party on behalf of a class under this title during the last three years, except for the following:

6.   I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

1/23/2017
_____
Date

DocuSigned by:
_____
D46F6E78567C475...
Joseph Rodriguez

**Joseph Rodriguez's Transactions in**
**Gigamon, Inc. (GIMO)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 01/17/2017 | Bought | 1,000 | $44.2765 |